UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | |
| : | CASE NO. 3:14-cr-206 (VLB) - 3 |
| v. : | |
| : | July 26, 2016 |
| WILMER ANTONIO : | |
|    GOMEZ-RODRIGUEZ : | |
|    Defendant. : | |
| : | |

**MEMORANDUM OF DECISION DENYING DEFENDANT'S MOTION FOR ACQUITTAL [Dkt. 97] AND MOTION FOR A NEW TRIAL [Dkt. 98]**

I.   **Introduction**

On September 15, 2015, following two days of evidence presented by the government in a narcotics conspiracy trial, a jury rendered verdicts of guilty against the defendant on Counts One and Two of the Indictment. The defendant thereafter moved for a judgment of acquittal [Dkt. 97] and for a new trial [Dkt. 98]. For the reasons that follow, the defendant's post-trial motions are DENIED.

II.   **Factual Background**

In Count One of the Indictment, a grand jury charged the defendant with conspiracy to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(i) and 846. In Count Two, the grand jury charged the

defendant with possession and distribution of one kilogram or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(i), and 18 U.S.C. § 2.  [Dkt. 9].

Trial of the matter began on September 8, 2015.  In its case-in-chief, the government presented the testimony of several Special Agents and Task Force Officers of the DEA, as well as the testimony of a DEA chemist.  In addition, the government presented recordings and transcripts of several telephone calls intercepted between an undercover officer and a co-defendant, Omar Andrade, as well as an unidentified third individual.  From the witness testimony and the recordings and transcripts, the following facts were presented to the jury:

During August and September of 2014, Andrade negotiated with the undercover to sell the undercover two kilograms of heroin at a sale price of $68,000 per kilogram.  After speaking with the undercover, Andrade would periodically call an unidentified third male who used a particular telephone, which the agents described as "the Chui phone," and arrange face-to-face meetings to discuss the contemplated transaction.

During this same time period, co-defendant Estrella-Disla's telephone contacted the defendant's telephone repeatedly, and the phones of the defendant and Estrella-Disla exchanged text messages.  DEA agents testified that these messages appeared to involve negotiations, a person known as "Chui," and a possible purchase price of $59,000.  Estrella-Disla's telephone also contacted the

2

'Chui phone' by text.  DEA agents testified that these messages contained discussions of an impending transaction.  On September 30, 2014, Andrade met with an informant, working with the undercover, at a diner in Norwalk.  After a short while, Andrade and the informant changed the meeting location and drove to another location in Norwalk.  At the second location, in a parking lot, Andrade left the informant's vehicle, and met with Estrella-Disla, who was on foot near where the informant's vehicle had been parked.

A video camera recorded the events that transpired next.  In the videotape, Estrella-Disla and Andrade can be seen approaching the informant's vehicle. Next, another vehicle appeared and drove into the parking space directly next to the informant's vehicle.  The defendant was the driver of this second vehicle.  The defendant opened the driver-side door of the vehicle.  The defendant then remotely opened the trunk of the second vehicle, exited the vehicle and, as Estrella-Disla was removing a package from the trunk and handing it to Andrade, walked around the back of the car to join the two co-defendants.  Estrella-Disla and Andrade then moved the package into the rear passenger compartment of the informant's vehicle while the defendant stood nearby and watched.

The package, which was seized at the scene by DEA agents, weighed approximately 1220 grams and contained heroin. The net weight of the heroin was approximately 998.4 grams.  The car driven by the defendant was later determined to have belonged to Estrella-Disla.  The jury found the defendant

3

guilty on Count One, and found that the object of the conspiracy involved at least one kilogram of heroin. The jury also found the defendant guilty on Count Two, and found that the amount of heroin possessed and distributed was between 100 and 1000 grams.

### III.     Legal Standard

Rule 29 of the Federal Rules of Criminal Procedure provides that the court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a).  In considering a motion for judgment of acquittal under F.R.Crim.P. 29(c), the Court must view the evidence and all reasonable inferences in the light most favorable to the prosecution, and must deny the motion if "any rational trier of fact could have found the essential elements of the crimes charged beyond a reasonable doubt." *United States v. Coté*, 544 F.3d 88, 98 (2d Cir. 2008).

Rule 33 of the Federal Rules of Criminal Procedure "confers broad discretion upon a trial court to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." *United States v. Polouizzi*, 564 F.3d 142, 159 (2d Cir. 2009). A Rule 33 motion may be granted "if the interest of justice so requires." F.R.Crim.P. 33(a).  It should only be granted where "it would be a manifest injustice to let the guilty verdict stand." *United States v. Lin Guang*, 511 F.3d 110, 119 (2d Cir. 2007).

IV.     Argument

The defendant urges the Court to enter a judgment of acquittal and argues that the Government insufficiently proved Mr. Gomez-Rodriguez was involved in the alleged conspiracy, because "the only evidence of such presented at trial were uncorroborated wiretapped phone calls and text messages." [Dkt. 97, Def.'s Mem. at 4].  The defendant argues that "there was no proof presented that the person utilizing the Gomez-Rodriguez phone was actually being used by the Defendant" and that there was "no corroborative testimony or evidence that demonstrated a conspiracy or the knowledge that [the defendant] possessed regarding the one kilogram of heroin in Mr. Estrella-Disla's trunk." [Id. at 5].

The jury saw translations of text messaging transcripts showing that on September 14, 2014, the phone recovered from Estrella-Disla exchanged text messages with the phone recovered from Gomez-Rodriguez:

| | |
|---|---|
| Estrella-Disla Phone: | I did not call Chui<br>Key call the guy that we are going to buy one or for him to go in price |
| Gomez Phone: | In about how much |
| Estrella-Disla Phone: | Tell him 59 with the ticket |

[Ex. 6C (Translation)].  On September 15, 2014, the two phones exchanged the following messages:

| | |
|---|---|
| Gomez Phone: | I went to see the dude |

5

| | |
|---|---|
| **Estrella-Disla Phone:** | **Yeah** <br> **What he say** |
| **Gomez Phone:** | **He told that, they don't want lower than that** |
| **Estrella-Disla Phone:** | **He better watch himself** |
| **Gomez Phone:** | **That he has other people but they won't let it go** |

[Id.].  The jury was also shown a call log from Estrella-Disla's phone.  [Ex. 5E].  The log showed that immediately prior to his arrest at the scene of the transaction, the last four calls placed by Estrella-Disla were to the Chui phone. [Ex. 5E at 7].  Prior to those four calls to the Chui phone, the log showed that Estrella-Disla called the defendant three times.  [Id.].  No other calls were placed from the Estrella-Disla phone on that date.  [Id.].

"In cases of conspiracy, deference to the jury's findings is especially important ... because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel."  *United States v. Snow*, 462 F.3d 55, 68 (2d Cir. 2006).  In the instant case, with regard to corroboration of the text message evidence, the jury could have rationally found that the fact that the cellular phone at issue was recovered from the defendant's person after his arrest supported a finding that the person utilizing the phone was in fact the defendant.  The fact that the defendant's phone exchanged messages with Estrella-Disla's phone on an almost daily basis in the weeks leading up to the transaction also suggests that the phone was not being used by anyone other than the defendant.  Perhaps

6

most importantly, the fact that the defendant arrived at the precise location of the narcotics transaction at issue, driving Mr. Estrella-Disla's vehicle, with the narcotics in the trunk of the vehicle, recognized both co-defendants, immediately opened the trunk of the vehicle without being asked to do so, and stood watching as his co-defendants transferred the narcotics from the trunk of the vehicle he was driving into the informant's vehicle, corroborates the text message evidence showing the defendant's knowledge of, and involvement in, the conspiracy.

Defendant also argues that the mere fact that the defendant was present at the scene of the September 30, 2015 narcotics transaction does not, in and of itself, demonstrate his guilt. Indeed, the jury was clearly instructed that "the defendant's mere presence at the scene of an alleged crime does not, by itself, make him a member of the conspiracy." [Dkt. 97 at 4-5]. However, the jury was presented with evidence of continuous contact between Gomez-Rodriguez and Estrella-Disla, discussions about a transaction, and call logs showing contact between Estrella-Disla and the Chui phone (which was also in contact with Andrade). Moreover, the video shows more than just mere presence, the recording also shows the defendant's recognition of the two co-defendant's, the defendant's immediate opening of the trunk upon his arrival, and that the defendant reacted without any surprise or confusion as the narcotics were transferred from the trunk of the vehicle he had just parked into another vehicle. "Where the government presents evidence tending to show that the defendant

was present at a crime scene under circumstances that logically support an inference of association with the criminal venture, a reasonable juror could conclude the defendant was a knowing and intentional criminal conspirator." *Snow*, 462 F.3d at 68 (2d Cir. 2006) (internal quotation omitted).  Here, there was more than enough evidence for a reasonable juror to conclude that the defendant was a knowing participant in the conspiracy.

Finally, the defendant argues that the Government did not present sufficient evidence as to the quantity of heroin involved that was reasonably foreseeable to Mr. Gomez-Rodriguez to sustain a conviction as to Count One of the Indictment.  "The defendant need not have actual knowledge of the exact quantity of narcotics involved in the entire conspiracy; rather, it is sufficient if he could reasonably have foreseen the quantity involved."  *Snow*, 462 F.3d at 72.  Here, the jury was presented with text messages in which the defendant discussed a purchase price of $59,000 with a co-conspirator, similar to the price of $68,000 discussed by Andrade and the informant.  The jury was also shown a videotape in which the defendant did not appear surprised or curious when a sizeable wrapped package containing heroin and weighing more than one kilogram was removed from the trunk of the car that the defendant drove to the scene of the transaction and parked immediately adjacent to the informant, Andrade and Estrella.  From these facts alone, the jury could have concluded

beyond a reasonable doubt that the conspiracy in which the defendant participated concerned the distribution of one kilogram or more of heroin.

Defendant's motion for a new trial is "based upon substantially the same grounds as his Rule 29 motion." [Def.'s Mem. at 7]. Specifically, the Defendant argues that that "the evidence at trial preponderates heavily against the verdict because the evidence does not prove that [the defendant] knowingly commit[ed] the criminal offenses for which he has been charged in the Indictment." [Id.] On the basis of the text messages and videotape evidence, as well as the evidence seized from the scene of the transaction, a rational jury could have concluded that the defendant was knowingly involved in the conspiracy to distribute one kilogram of heroin and knowingly possessed between 100 and 1000 grams of heroin. The defendant has not identified any manifest injustice that this Court must correct by ordering a new trial.

V.   Conclusion

For the reasons stated above, the defendant's motions for a judgment of acquittal [Dkt. 97] and a new trial [Dkt. 98] are DENIED.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant

**United States District Judge**

**Dated at Hartford, Connecticut: July 26, 2016**